### BROWN v. FLETCHER et al.

(Circuit Court of Appeals, Sixth Circuit. November 9, 1910.)

#### No. 2,029.

1. JUDGMENT (§ 562*)—JUDGMENTS OPERATIVE AS BAR—NECESSITY OF DECISION ON MERITS.

A subsisting judgment or decree rendered in a suit between given parties will not operate to bar a second suit between the same parties or their privies, unless the matter in controversy in the latter suit was determined on its merits in the first suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1009; Dec. Dig. § 562.*]

2. JUDGMENT (§§ 543, 551, 577, 821*)—MERGER AND BAR—FOREIGN JUDGMENT.

The doctrine of merger of a cause of action in a judgment thereon is applied to judgments rendered in courts of a state or district other than that in the court in which the question arises, as well as to judgments of courts of the same jurisdiction and to final decrees in equity as well as to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgments at law, but in either case the judgment or decree to operate as a merger must be valid.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 988, 996, 1492–1495; Dec. Dig. §§ 543, 551, 577, 821.*]

3. ELECTION OF REMEDIES (§ 11*)—ACTS CONSTITUTING ELECTION—MISTAKE AS TO REMEDY.

A person is not estopped from pursuing a remedy that he is entitled to because he has endeavored to avail himself of a remedy that he never was entitled to.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 14; Dec. Dig. § 11.*]

4. ELECTION OF REMEDIES (§ 11*)—ACTS CONSTITUTING ELECTION—MISTAKE AS TO REMEDY.

The presentation for allowance against the estate of a decedent of a claim based on a decree of a court of another state in a suit for an accounting and a final adjudication thereon disallowing the claim on the ground that the decree was invalid as against the estate and the executors for want of jurisdiction over them in the court which rendered it did not constitute an election of remedies, which precludes the claimant from subsequently bringing suit against the executors on the original cause of action.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 14; Dec. Dig. § 11.*]

5. JUDGMENT (§ 563*)—CAUSES OF ACTION BARRED—IDENTITY OF CAUSE OF ACTION.

A judgment holding a foreign decree sued on void as against the defendants for want of jurisdiction over them by the court which rendered it is not a bar to a subsequent suit on the original cause of action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1002, 1008, 1010, 1014; Dec. Dig. § 563.*]

6. JUDGMENT (§ 570*)—JUDGMENTS OPERATIVE AS BAR—DECREE OF DISMISSAL.

A decree dismissing a suit on the express ground of "want of prosecution," although other grounds of dismissal were urged and were discussed by the court in its opinion, is not a bar to a second suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1040; Dec. Dig. § 570.*]

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Suit in equity by Albert W. Brown against Frank W. Fletcher and Allan M. Fletcher, executors of the last will and testament of George N. Fletcher, deceased, and Grace Fletcher King. Decree for defendants, and complainant appeals. Reversed.

This is a suit in equity and was commenced in the court below on October 26, 1908; jurisdiction having been acquired through diversity of citizenship. It appears by the bill that complainant is the sole legatee and devisee of his deceased wife Frances M. Brown, who was the daughter and sole heir at law of William White, late of the city of Boston. White died intestate April 28, 1873, and Mrs. Brown died testate December 3, 1902. The appellees Frank W. Fletcher and Allan M. Fletcher are the executors of the last will and testament of George N. Fletcher, late of Detroit Mich., who died November 5, 1899, and whose will was probated in Wayne county of that state. These executors and Grace Fletcher King (the remaining appellee) were the children of George N. Fletcher, and are the residuary devisees and legatees of his estate.

The bill of complaint was dismissed October 2, 1909, upon two pleas in bar

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

filed by defendants, and the present proceeding is pending here upon appeal and certain assignments of error. Under the pleas three points of defense were urged, to wit, res adjudicata, election, and abandonment. The pleas were sustained upon facts which appear in a stipulation. The controversy so far as it need be stated grew out of certain transactions had between William White and George N. Fletcher in pine lands located in Michigan, which were begun in 1856, and continued until White's death in 1873. White furnished certain money to purchase lands, and Fletcher was placed in control. Another person named Campbell was also interested as appears by a contract in writing entered into between him and Fletcher on March 15, 1856. Some of the lands purchased were held in common in the names of White, Fletcher, and Campbell, and some in the name of Fletcher alone. Campbell died July 16, 1857, and his interests were ultimately acquired by White except in certain pine lands. As to these latter interests, it was averred in a bill filed in the court below by the daughter of White as hereinafter mentioned that they also were transferred to White. At any rate, no interest of Campbell seems to be involved in the present suit.

It appears by the agreed statement of facts that upon White's death R. H. Spaulding was appointed administrator of his estate, and on April 24, 1874, Spaulding filed in the Supreme Judicial Court of Suffolk county, Mass., a bill in equity against George N. Fletcher, of Detroit, James Campbell and Eliza White, widow of William White, averring, in substance, that the intestate had been engaged in extensive business transactions with George N. Fletcher in the purchase and sale of lands and in lumbering operations in Michigan; that Fletcher refused to disclose the true nature of the joint transactions; that Campbell claimed to have some interest in the transactions and investments, and was in possession of the books of account, deeds, vouchers, etc.; and that he refused to allow examination to be made of the books, etc. Complainant prayed for discovery and an accounting, and that defendants be decreed severally and jointly to pay any balance found due.

Fletcher was served with process in the cause and appeared and filed an answer. Prior to his death the parties, including Frances M. Brown, who had been made a party, entered into an agreement to refer the matter in issue to arbitration under a rule of court. The matter was thereupon referred to United States Circuit Judge, Putnam, who, according to the terms of the submission, made a partial report. He found that Fletcher should account. The matter was then sent back to Judge Putnam, and during the pendency of the accounting Fletcher died. It was provided in the agreement to arbitrate that the suit should not abate on the death of any party, but that it should proceed against his executors or administrators. Fletcher's executors, however, refused to enter the jurisdiction of the Massachusetts court or to become parties to the suit. Fletcher had left a small estate in Massachusetts, and an administrator with the will annexed of his estate was appointed in that state and was made a party to the suit. Notice of an order to appear and defend was served in the state of Michigan upon the executors and residuary legatees, defendants in the present suit. They declined to heed the notice and the case proceeded before Judge Putnam as arbitrator. He made an award in 1903, in favor of complainant in the present suit (who had succeeded as before stated to the interest of White and White's daughter) for $394,372.87 and costs against Fletcher's administrator with the will annexed, and in terms also against the present appellees. The award was affirmed by final decree of the Massachusetts court, entered April 14, 1903. Fletcher's estate in Massachusetts was not sufficient to satisfy any part of the decree. As to the parties other than Fletcher, who were made defendants as before stated in that suit, the bill was dismissed.

It appears both by the present bill and the agreed statement that the appellant presented to the commissioners on claims in the matter of the estate of Fletcher in Wayne county, Mich., a claim based upon the decree of the Massachusetts court, which was disallowed. An appeal was taken by Brown to the circuit court of Wayne county, where the disallowance of the claim by the commissioners was affirmed. The judgment of the Circuit Court was affirmed by the Supreme Court of Michigan, 146 Mich. 401, 109 N. W. 686, and that judgment was affirmed by the Supreme Court of the United States, 210 U.

S. 82, 28 Sup. Ct. 702, 52 L. Ed. 966. The grounds of the decisions will be stated later.

It is alleged in the bill in the present case that Fletcher continued to manage and dispose of pine lands after White's death, and never denied that he was accountable to White's estate for the moneys and property in his hands; that he never rendered an itemized account of the moneys and property; that the present appellees are in possession of these moneys and properties and hold them in trust. Discovery and accounting are prayed.

Prior to the commencement of the proceeding before the commissioners on claims in the probate court of Wayne county on February 4, 1901, Frances M. Brown as administratrix de bonis non of the estate and sole heir at law of William White, deceased, filed a bill against the present defendants in the court below, in which she set out substantially the same facts, though not so much in detail, as those stated in the present case, so far as they relate to the merits of the action. That suit and the proceedings therein and the action of the court below are made the subject of the second plea, and all are sufficiently stated in the opinion.

H. R. Martin and Walter B. Grant, for appellant.

Henry Ledyard and Henry Campbell, for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The right to maintain a bill in equity founded on diversity of citizenship to establish a claim against the legal representatives of an estate is not questioned; and it may be safely assumed for the purposes of this decision that complainant is entitled to maintain his bill unless one or both of the pleas must be sustained. Eddy v. Eddy, 168 Fed. (6th Circuit) 590, 598, 93 C. C. A. 586; Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 43, 30 Sup. Ct. 10, 54 L. Ed. ——; O'Toole v. Hurley, 115 Mich. 517, 73 N. W. 805.

It is to be observed that, in spite of all the litigation had and time consumed over the matters mentioned in the statement, the issues tendered by the bill—that is to say, what if any pine land and lumber transactions were ever had between the deceased principals White and Fletcher, and what would result from discovery and a proper accounting—have never in fact been tested and tried, except in a court whose right to proceed to final decree was lost through the death of Fletcher. Brown v. Fletcher's Estate, 146 Mich. 401, 109 N. W. 686; s. c., 210 U. S. 82, 28 Sup. Ct. 702, 52 L. Ed. 966; Brown v. Fletcher (C. C.) 140 Fed. 639. The rule is that a subsisting judgment or decree rendered in a suit between given parties will not operate to bar a second suit between the same parties or their privies unless the matter in controversy in the latter suit was determined on its merits in the first suit. In Hughes v. United States, 4 Wall. 232, 237, 18 L. Ed. 303, Justice Field stated the rule thus:

"In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."

Another mode of expressing the rule is found in Baker v. Cummings, 181 U. S. 117, 124, 21 Sup. Ct. 578, 581 (45 L. Ed. 776), as stated by the late Justice Peckham:

"Stated generally and without detail, the theory of the law is that matters which have once been fully investigated between the parties and determined by the court shall not be again contested, and that the judgment of the court upon matters thus determined shall be conclusive on the parties and never subject to further inquiry."

The principle is that the right shall be accorded to every litigant to have the issue he tenders submitted to a competent tribunal and once heard and disposed of on its merits; but that (apart from new trial, appeal or error) as against the same party this right shall not be given twice. As observed by Mr. Justice Harlan in Southern Pacific R. v. United States, 168 U. S. 1, 49, 18 Sup. Ct. 18, 27, 42 L. Ed. 355:

"The aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them."

See, also, Keller v. Stolzenbach (C. C.) 20 Fed. 47; Bunker Hill & Sullivan Min. Co. v. Shoshone Min. Co., 109 Fed. (9th Circuit) 504, 507, 47 C. C. A. 200; Ex parte Loung June (D. C.) 160 Fed. 251; In re Ward's Estate, 152 Mich. 218, 236, 237, 116 N. W. 23.

It is earnestly contended on behalf of appellees respecting the claim presented by the appellant to the commissioners of claims that it "was sufficient in form to permit of opening up the entire controversy and a full presentation of the merits." It is not said that the entire controversy was in fact presented and determined on its merits. The claim is that this might have been done, and the failure to do so was the equivalent of such a submission and determination. The claim as presented bears date of April 6, 1904, is addressed to the commissioners and signed by Brown, and is as follows:

"You are hereby notified that Albert W. Brown is a creditor of said estate in the sum of four hundred and four thousand two hundred and fifty-four dollars and twelve cents ($404,254.12), and interest thereon at the rate of six (6) per cent. per annum, from the 14th day of April, 1903.

"Said claim is based upon the final decree of the Supreme Judicial Court for the commonwealth of Massachusetts entered on the 14th day of April, 1903, and which decree was entered in a suit in said court to which the said George N. Fletcher, deceased, in his lifetime, was a party defendant, and which decree purports to and does bind the estate of the said decedent to the payment of the full amount decreed to be paid, as aforesaid, under its provisions.

"A copy of the said decree and the proceedings in said suit, duly certified and attested under the act of Congress and the law of this state, is ready to be produced and proved before you as the commissioners on claims in said estate, and the said claimant, Albert W. Brown, does and will claim for the said decree when produced and proven according to law the same full force, faith, and credit to which the same is entitled under the laws of said commonwealth of Massachusetts within the state of Michigan, against the estate of said George N. Fletcher, deceased.

"The said Albert W. Brown therefore demands and claims against the estate of the said George N. Fletcher, deceased, the full sum of $404,254.12, with interest thereon at the rate of six (6) per cent. per annum from the 14th day of April, 1903.

"You are also notified that the said claimant is now ready to present and prove his said claim without delay, and you are respectfully requested to fix an early date for the hearing thereof in accordance with the statute in such case made and provided."

It will be noticed that the claim is in terms based solely upon the Massachusetts decree, and contains no mention of the merits, or even of the nature, of the demand which resulted in the decree relied upon, except as reference is made to "a copy of said decree and of the proceedings in said suit" to be produced before the commissioners. The only evidence offered to prove the claim was an exemplification of the record of the Massachusetts court. This course was pursued, as stated in argument, on the theory that the evidence of the cause of complaint of the White estate against the Fletcher estate was merged in the decree. In Mason v. Eldred, 6 Wall. 232, 234, 18 L. Ed. 783, Justice Field, having under consideration the question whether under the joint debtor act of Michigan the note in suit had been merged in a certain judgment, stated the general rule and the effect of merger thus:

"If the note in suit was merged in the judgment, then the judgment is a bar to the action, and an exemplification of its record is admissible, for it has long been settled that under the plea of the general issue in assumpsit evidence may be received to show, not merely that the alleged cause of action never existed, but also to show that it did not subsist at the commencement of the suit. On the other hand, if the note is not thus merged, it still forms a subsisting cause of action, and the judgment is immaterial and irrelevant."

This rule was applied, Justice Miller announcing the opinion, in Eldred v. Bank, 17 Wall. 547, 548, 552, 21 L. Ed. 685. It is scarcely necessary to say that the doctrine of merger is applied to judgments rendered in courts of a state or district other than that of the court in which the question arises, as well as to judgments of courts of the same jurisdiction. In Schuyler v. Israel, 120 U. S. 506, 509, 7 Sup. Ct. 648, 649, 30 L. Ed. 707, when passing upon the sufficiency of an answer to an action on a note brought in a federal court of Missouri, setting up a judgment previously rendered on the same note in a federal court of Texas, Justice Miller said:

"That judgment must be held to merge the evidence of the debt, whether that evidence be parol or written, in the judgment first recovered."

See, also, McCadden v. Slauson, 96 Tenn. 586, 590, 36 S. W. 378; 2 Black on Judgments (2d Ed.) § 864, and cases cited. The doctrine of merger applies equally to a final decree in equity. Say the court in Mutual Life Ins. Co. v. Newton, 50 N. J. Law, 571, 577, 14 Atl. 756, 759:

"If the decree is final, then its result is to merge the original cause of action."

See, also, 2 Black on Judgments (2d Ed.) § 675; Pennington v. Gibson, 57 U. S. 65, 77, 14 L. Ed. 847; Nations v. Johnson, 65 U. S. 195, 16 L. Ed. 628.

The commissioners decided that the Massachusetts court was without jurisdiction to enter a decree, and Brown's claim was consequently rejected. When the case was taken on appeal to the circuit court

of Wayne county, it was presented to the court with the understanding that a jury should be considered as in attendance, and that the determination of the court should take the shape of a direction to render a verdict either for or against plaintiff's claim. This was carried out and in the charge formulated for the purpose the history of the litigation in Massachusetts was in substance stated, and thereupon the court said:

"I am of the opinion that the claim of the plaintiff was properly disallowed by the commissioners, and the jury is therefore instructed to render a verdict to that effect."

In short, the case appears to have been heard and disposed of in each tribunal, from the commissioners to the Supreme Court, solely upon the question of the sufficiency and binding effect of the Massachusetts decree.

Since the result of these rulings was that the Massachusetts court was without jurisdiction to render a decree to bind the present defendants or the estate in Michigan, it is now plain enough that the cause of complaint set out in the present bill could not have been merged in that void decree; and the question is whether complainant can now maintain his alleged cause of complaint. In McCadden v. Slauson, supra, it is said (page 590, 96 Tenn., page 379, 36 S. W.):

"We are of opinion that the doctrine of merger is only applicable in a case where a valid judgment has been rendered, and, it having been determined in the litigation between these parties that the Ohio judgment was void, there could be no merger of the note and the plaintiff is entitled to maintain his suit upon the original cause of action."

See, also, Zalesky v. Iowa State Ins. Co., 102 Iowa, 512, 519, 70 N. W. 187, 71 N. W. 433; Packard v. Mendenhall, 42 Ind. 598, 600; Oil Well Supply Co. v. Koen, 64 Ohio St. 422, syl. 1, page 428, 60 N. E. 603; Reed v. Chilson, 142 N. Y. 152, 155, 36 N. E. 884; Green v. Clawson, 5 Houst. (Del.) 159, 162; Blakeslee v. Murphy, 44 Conn. 188, 194; Ludwig v. Murphy, 143 Cal. 473, 475, 77 Pac. 150; Sackett v. Montgomery, 57 Neb. 424, 426, 77 N. W. 1083, 73 Am. St. Rep. 522; 2 Black on Judgments (2d Ed.) § 680, and cases cited.

It is not meant by thus pointing out these familiar principles of the doctrine of merger to do more than gain as clear a perception as we may of the real significance of the plea of res adjudicata alluded to in the statement. Defendants' position is this: That it was open to Brown, first, to present his claim as it was based on the decree of the Massachusetts court; and, next, upon rejection of the claim both before the commissioners and the Circuit Court, to present his cause of complaint in practically the same form and manner as it is set forth in the present bill, including the discovery and accounting sought, the insistence being that his claim was for a definite sum, and that the certified decree on the one hand and the evidence tending to support his cause of complaint on the other were but items of evidence tending to support his claim.

One way of testing the strength of this contention is to compare the claim as it was actually made with the claim as it is set out in

the bill. The claim presented to the commissioners was for a definite sum, the exact amount of the decree. The claim made in the bill is wholly unliquidated, is based upon an unsettled partnership and an alleged right to a discovery of partnership assets and funds consisting of lands and other assets, and a right to an accounting covering a multitude of transactions which occurred in a business of large proportions and extended over many years of time. The proceeding before the commissioners was conceived and conducted upon the basis of a decree which upon the theory of counsel for Brown merged everything that has been thus far stated, into a single claim for money in the sum of $404,254.12, with a specified rate of interest from a date named. True, this proved to be a false theory, but it was none the less a form and scheme of action. If it be conceded that the present cause of complaint could have been presented and tried and determined both before the commissioners and the Circuit Court, it is clear that it would have been a distinct and an additional cause of action. The very doctrine of merger as well as the contention of learned counsel for defendants proves this.

Was Brown bound at his peril to present both of these causes at the same time? Had he a right to test the validity of the decree, not only with the commissioners and in the Circuit Court but also before the two Supreme Courts, before attempting to maintain the present cause of complaint? The sequel to the test made of the decree, does not of itself conclusively show that Brown had no right so to make the test. It is not claimed that he did not make it in good faith and under the advice of counsel. He was as is stated in his claim, "a creditor of said estate in the sum of four hundred and four thousand two hundred and fifty-four dollars and twelve cents," or he was in no sense a creditor of the estate except only under a claim for an unliquidated amount, and that amount might have been as it may still be either less or more than the amount of the decree. Now, any claim that the penalty of trying out the decree alone was to preclude an actual as distinguished from a constructive trial of the present cause of complaint upon its merits, ought to be fortified by convincing reason and authority.

It is undoubtedly true that one cannot, after being defeated in an action, successfully maintain a second one simply upon a ground or reason additional to that set up in support of the former action. Werlein v. New Orleans, 177 U. S. 390, 399, 20 Sup. Ct. 682, 44 L. Ed. 817. Nor can one in a second attempt reach the same result as that first sought simply by "a different medium concludendi"; for, as observed by Mr. Justice Holmes in United States v. California & Ore Land Co., 192 U. S. 355, 358, 24 Sup. Ct. 266, 267, 48 L. Ed. 476:

"But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim, * * * and, a fortiori, he cannot divide the grounds of recovery."

The former adjudication was that the decree of the Massachusetts court could not be enforced. It was not that the demand erroneously treated as merged in the decree could not be. If evidence in support

of the present cause of complaint had been presented before the commissioners or the Circuit Court, it certainly would not have been pertinent to the issue upon the decree, and, had the decree been held enforceable, the offered testimony would have been inadmissible. The insistence that Brown's claim before the commissioners was independent of the decree in the sense that evidence tending to sustain the present cause of complaint would have tended to support the claim does not seem to us tenable. Brown's claim to be a creditor was in virtue of the assumed force and effect of the decree alone; it inhered in the decree; it was the decree. This, and this alone, was the theory of his action and chosen remedy. The validity of the claim as made and of the remedy adopted depended upon the validity of the decree. If the decree had been valid as against defendants, it would quite as certainly as would a domestic decree have been conclusive of Brown's rights. The only difference between such decrees would as regards the present question have been in method of enforcement.

The present inquiry would therefore seem to involve as much if not more a problem of remedies than one merely of fatal omission of issue or evidence. We think it will aid in the solution of this inquiry to consider at this stage complainant's claim that there is a distinct class of decisions which, rather than those declaring the principles of res adjudicata, identify and so ought to rule this branch of the case. These decisions it is urged hold that a course pursued similar in principle to the one under discussion is merely a mistake of remedy, which does not operate as a bar to any existing actual right or remedy either upon the theory of former adjudication or election of remedy.

In Northern Assur. Co. v. Grand View Bldg. Ass'n, 203 U. S. 106, 107, 27 Sup. Ct. 27, 51 L. Ed. 109, suit was brought by bill to reform a policy and recover upon it as reformed. A prior action at law upon the same instrument and between the same parties had been decided, in which it was held that the policy could not be changed by secondary evidence and the action could not be maintained for that reason. The judgment in that case was relied upon as a bar to the equitable proceeding before mentioned. Said Mr. Justice Holmes:

"The former decision, of course, is not an adjudication that the contract cannot be reformed. It was rendered in an action at law, and only decided that the contract could not be recovered upon as it stood, or be helped out by any doctrine of the common law. If it were to be a bar it would be so, not on the ground of the adjudication as such, but on the ground of election, expressed by the form in which the plaintiff saw fit to sue. As an adjudication it simply establishes one of the propositions on which the plaintiff relies; that it cannot recover upon the contract as it stands. The supposed election is the source of the effect attributed to the judgment. * * * Its (plaintiff's) choice of law was not an election but an hypothesis. * * * It could not, or at least did not need to, demand reformation, if a court of law could effect the same result. It did demand the result, and showed by its pleadings that the path it did choose was chosen simply because it was supposed to be an open way. Snow v. Alley, 156 Mass. 193, 195 [30 N. E. 691]."

In Bierce v. Hutchins, 205 U. S. 340, 346, 347, 27 Sup. Ct. 524, 525, 51 L. Ed. 828, the same learned justice had occasion to pass up-

on the effect of a previous assertion of a lien upon the property in issue, which the plaintiff had made and sought to enforce by a suit that was subsequently dismissed; and upon a claim that this constituted an election of remedy inconsistent with a claim of title, etc., it was said:

"Election is simply what its name imports: a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone. * * * The claim in the lien suit, as was said in a recent case, was not an election, but an hypothesis. * * * The fact that a party, through mistake, attempts to exercise a right to which he is not entitled, does not prevent his afterwards exercising one which he had and still has unless barred by the previous attempt."

In Barnsdall v. Waltemeyer, 142 Fed. (8th Circuit) 415, 420, 73 C. C. A. 515, 520, Waltemeyer brought an action against Barnsdall to recover certain money which he alleged Barnsdall had promised to pay to him and one Leach out of the first money he received for ore taken from certain property. Waltemeyer had acquired the interest of Leach. The fifth defense made by Barnsdall was that Waltemeyer had brought a suit in equity against him to rescind the agreement which Waltemeyer was then seeking to enforce, and that the suit had been dismissed upon its merits. Said Sanborn, Circuit Judge:

"It is contended that by the institution and prosecution of this suit in equity the plaintiff irrevocably elected to rescind the contract, and thereby estopped himself from maintaining this action to enforce it. But the fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges that it never had existence is no defense to any action to enforce an actual remedy inconsistent with that first invoked through mistake"—citing a number of decisions.

In Zimmerman v. Robinson & Co., 128 Iowa, 72, 74, 102 N. W. 814, 815, the court said of the effect of a failure in one suit to rescind upon a later suit to enforce a contract:

"Where but one remedy exists, the unavailing effort to enforce another does not constitute an election or estoppel which prevents a resort to the proper action."

This was but following another decision of the same court (128 Iowa, 75, 102 N. W. 815):

"An election exists only where two or more inconsistent remedies are open to a party, and he is at liberty to pursue any one of them. It cannot exist between consistent concurrent remedies, or between a rightful remedy and one which the party may mistakenly suppose to be applicable."

Again, the court adopted a rule laid down by the Supreme Court of Minnesota (128 Iowa, 75, 102 N. W. 815):

"But we think it equally true that a mere attempt to pursue a remedy or claim a right to which the party is not entitled, and without obtaining any legal satisfaction therefrom, will not deprive him of the benefit of that which he had originally a right to resort to or claim. * * * We know of no principle of law which imposes upon a party any other or greater penalty for attempting to assert a right to which he is not entitled than the judgment for damages and costs awarded against him in the action."

So in California in Agar v. Winslow, 123 Cal. 587, 590, 56 Pac. 422, 423, 69 Am. St. Rep. 84, it was held:

"That plaintiff was mistaken and undertook to avail himself of a remedy that he was never entitled to this does not prevent him from subsequently availing himself of a remedy that he is entitled to under the facts of the case. * * * No case has been called to my attention, nor do I believe that any can be found, which holds that a person is estopped from pursuing a remedy that he is entitled to, because he has endeavored to avail himself of another remedy that he never was entitled to. If this were the rule, then a mere mistake of judgment would result in depriving one of valuable rights."

In Rowell v. Smith, 123 Wis. 510, 516, 517, 102 N. W. 1, 3, an elaborate discussion of the doctrines of res judicata, election, and estoppel will be found. After stating some general rules on the first of these subjects, the learned judge in speaking of the effect of a former action spoke of it and the action under review thus:

"The former action proceeded upon the theory that there was a valid contract between the parties, while this action was grounded upon the theory that at best there was only an enforceable agreement to make such a contract. * * * The mere fact that in the former action it was claimed there was a guaranty good at law, and on the second occasion that must be deemed to have been abandoned and the action grounded on a transaction not culminating in a legal contract as intended, is not sufficient to render the former judgment a bar to the successful prosecution of this action upon principles of res adjudicata."

And on the subject of election (page 522, 123 Wis., page 5, 102 N. W.):

"Where only one remedy exists, but the plaintiff asserts one which he does not in fact possess, the proper remedy is not waived."

In Massachusetts the rule is stated thus (Snow v. Alley, 156 Mass. 193, 195, 30 N. E. 691, 692):

"Election exists when a party has two alternative and inconsistent rights, and it is determined by manifestation of choice. Metcalf v. Williams, 144 Mass. 452, 454 [11 N. E. 700]. But the fact that a party wrongfully supposes that he has two such rights and attempts to choose the one to which he is not entitled is not enough to prevent his exercising the other one to which he is entitled."

In McLaughlin v. Austin, 104 Mich. 489, 491, 62 N. W. 719, 720, a question of alleged election arose through prior filing of a lien by plaintiff, in which it was stated under oath that the materials in suit had been furnished in pursuance of a contract with a person other than defendant, against whom the suit then under consideration was brought to recover for the materials. It was said: '

"There is a difference between an election of remedies and a mistake of remedy, and the law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions, upon which recovery could not be had."

In Sullivan v. Ross' Estate, 113 Mich. 311, 319, 71 N. W. 634, 76 N. W. 309, 310, it appeared that plaintiff had theretofore brought an action based upon an alleged oral contract and failed, and there-

upon brought the action in question basing it upon a written contract; and of this the majority of the court on rehearing said:

"It will appear from the authorities already cited that if, in choosing his remedy, he has made a mistake, and for that reason failed, he is not cut off from pursuing the right remedy."

It is manifest that Brown's acts before the commissioners and the the Circuit Court did not constitute an election; for, as shown, an election presupposes at least two remedies from which to choose. The theory of the remedy he adopted involved a merger of his original cause of action; while the sequel proved that his assumed right under the decree and remedy to enforce it were nullities and his only right and remedy existed in and upon the original cause of action.

There is another and slightly different way in which this subject may be considered. Recalling defendants' insistence that Brown might have presented to the commissioners and to the Circuit Court the decree of the Massachusetts court and also his present cause of complaint, it will be observed that this impliedly concedes that Brown might in effect if not in form have introduced two counts, one embracing the decree and the other the facts stated in the present bill.

In Water, Light & Gas Co. v. City of Hutchinson, 160 Fed. (8th Circuit) 41, 43, 90 C. C. A. 547, 549, the question was whether a judgment rendered against plaintiff in an action upon an express contract for electric lights furnished to the city was a bar to a subsequent action on quantum meruit for the value of the service so rendered. Judge Phillips in announcing the opinion of the court said:

"While not contending that the plaintiff had not the right in the first instance to a quantum meruit action, the position of defendant's counsel is that the plaintiff was entitled to pursue only one remedy, and, having made its election to sue upon the express contract and lost, it is barred from thereafter resorting to the action quantum meruit. Judged by their argument, their position divides itself into two aspects, election of remedy and res adjudicata."

After stating the rule applicable to a choice made of two subsisting inconsistent remedies, the learned judge proceeded (page 44, 160 Fed. page 550, 90 C. C. A.):

"It is familiar practice where A., under special contract, has done work for B., such as undertaking to build a house and the like, being apprehensive that he may not have come up to the full measure of the requirements of the contract, he may in a suit for the enforcement of the contract add a second count in quantum meruit. * * * He is entitled to so plead to meet the contingency of the proofs, so as to avoid the disaster of going out of court on failure to show full performance of the contract. * * * As each count would constitute a separate cause of action, we know of no established rule of procedure that would compel the plaintiff to embrace them in one action. * * * The authorities abundantly support the proposition that, when judgment goes for the defendant in an action on express contract on the ground that the contract had not been completed by the plaintiff, such judgment is not a bar to a second action to recover the reasonable value of the same services. * * * The fact that a party through mistake attempts to exercise a right to which he is not entitled, or has made choice of a supposed remedy that never existed, and pursued it until the court adjudged that it never existed, should not and does not preclude him from afterwards pursuing a remedy for relief, to which in law and good conscience he is entitled."

It hardly need be said again that Brown committed a mistake in his endeavor to enforce a void decree. But it is hard to see why the theory of merger alone of the former action should not furnish a most natural instance for the application of the rule of the foregoing decisions.

But, in determining whether the present case really belongs to that class of decisions, we shall derive assistance through reference to some of the leading cases which are relied on by defendants to show that the present cause of complaint must be treated as "forever concluded between these parties under the doctrine of res adjudicata."

In Werlein v. New Orleans, supra (177 U. S. 390, 396, 20 Sup. Ct. 682, 685, 44 L. Ed. 817), it was wisely said by the late Justice Peckham:

"The law in relation to the effect of a judgment between the same parties is well known, but its application to particular cases is sometimes difficult to determine."

The case most relied on by counsel for defendants in this respect is Schlee v. Darrow's Estate, 65 Mich. 362, 32 N. W. 717. But that case did not involve or decide the present question. It is true that plaintiffs in that case (the former wards of the defaulting guardian) placed a claim before the commissioners against the estate of the deceased surety of the guardian, which showed that the probate court had by an order found the amount of the guardian's default for which the surety was alleged to be liable. It is true, also, that the order of the probate court was adjudged to be void, and, further, that, in the absence of demand for a bill of particulars, it was held that evidence was admissible to show the facts constituting the default, and the extent of the liability of the guardian and surety on the bond. But it nowhere appears that the plaintiffs had in a separate and earlier proceeding undertaken and failed to maintain their rights upon the void order of the probate court. Nor do we understand it to be the fact, or to be claimed, that plaintiffs attempted to rest their claim on the order alone. On the contrary, the claim is for the "amount received" by the guardian on the sale of the real estate of the wards, and "adjudged due" by the order of the probate court. If they had attempted and failed to recover on the order in either of the ways suggested, and then had sought to recover the amount of the guardian's default and had met with the defense now under discussion, the decision upon such a case would have been helpful here.

In Werlein v. New Orleans, supra, the city of New Orleans commenced an action to recover of Werlein a certain lot situated in the city, claiming that Werlein had acquired the property through mesne conveyances from a purchaser at a sale made by the United States marshal, and that the sale was void because the property had been previously dedicated to public use. It there appeared that one Klein had in a former action recovered judgment against the City of New Orleans and had issued a fieri facias on the judgment to the marshal, who thereupon seized and took possession of this same property and advertised it for sale. The city then filed a bill against Klein alleging these facts, and, further, that Klein had registered his judgment

in the office of the administrator of public accounts in accordance with a statute, and, therefore, that he had no right to issue a writ for the collection of the judgment; next, that he had transferred his judgment, and, lastly, that the writ upon which the property had been seized was issued for a larger sum than was due. Under the prayer of the bill an interlocutory injunction was issued, but it was subsequently dissolved and the bill dismissed. Among the defenses made in the last suit was one based on the judgment dismissing the former bill against Klein. In passing upon this defense Justice Peckham said (page 399, 177 U. S., page 686, 20 Sup. Ct. [44 L. Ed. 817]):

"The fact now alleged would have furnished in the chancery suit but another ground or reason upon which to base the claim of the city, that Klein had no right to sell the property under his writ. In other words, it would have been additional proof of the cause of action set forth in that suit. The city would have had the right to set that fact up in its bill and to have proved it on the trial, and, if proved, it would have been foundation for a judgment enjoining the sale of the property; but the fact would have been nothing more than evidence of the right of the city to obtain the injunction asked for in the chancery suit, and we think it was the duty of the city to set up in that suit and prove any and all grounds that it had to support the allegation that Klein had no right to seize or sell the property."

The controlling feature of that decision is that the previous dedication "would have been additional proof of the cause of action set forth in that suit"; that is, the earlier chancery suit brought to enjoin the original sale. Surely we but repeat when we state that neither a cause of complaint like the one now in dispute, nor evidence tending to prove it, "would have been additional proof of the cause of action" which Brown sought to maintain before the commissioners and in the Circuit Court. Effort is made to avoid this under the rule of evidence declared in that class of decisions which hold that in certain circumstances, such as lack of jurisdiction in the court rendering the decree, it is open to the person to be charged to challenge the validity of the decree. For instance, it will be sufficient to recall the familiar rule in this behalf by referring to one of the cases cited by defendants' counsel, viz; Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 291, 292, 8 Sup. Ct. 1370, 1375, 32 L. Ed. 239. In speaking of the constitutional and statutory provisions requiring faith and credit to be given, Justice Gray said:

"Those provisions establish a rule of evidence, rather than of jurisdiction. While they make the record of a judgment, rendered after due notice in one state, conclusive evidence in the courts of another state, or of the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. Judgments recovered in one state of the Union, when proved in the courts of another government, whether state or national, within the United States, differ from judgments recovered in a foreign country in no other respect than in not being re-examinable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties. Hanley v. Donoghue, 116 U. S. 1, 4 [6 Sup. Ct. 242, 29 L. Ed. 535]. In the words of Mr. Justice Story, cited and approved by Mr. Justice Bradley speaking for this court; 'The Constitution did not mean to confer any new power upon the states, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of other states domestic judgments to all in-

tents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can issue upon such judgments without a new suit in the tribunals of other states. And they enjoy not the right of priority or lien which they have in the state where they are pronounced, but that only which the lex fori gives to them by its own laws in their character of foreign judgments.' * * *

"The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim), from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it. Louisiana v. New Orleans, 109 U. S. 285, 288, 291 [3 Sup. Ct. 211, 27 L. Ed. 936]; Louisiana v. St. Martin's Parish, 111 U. S. 716 [4 Sup. Ct. 648, 28 L. Ed. 574]; Chase v. Curtis, 113 U. S. 452, 464 [5 Sup. Ct. 554, 28 L. Ed. 1038]; Boynton v. Ball, 121 U. S. 457, 466 [7 Sup. Ct. 981, 30 L. Ed. 985]."

But these established principles do not tend to elucidate the question now under consideration. There was nothing in the character of Brown's decree to prevent its enforcement, if the executors and devisees of Fletcher had been properly before the Massachusetts court. It was simply a defect of parties that rendered Brown's chosen remedy a mistake. The evidential characteristic of the decree could not affect the nature of the issue involved in the proceeding before the commissioners.

Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 681, another decision relied on by defendants, was an action on certain bonds with attached coupons. As a bar to the action the county pleaded a prior judgment rendered in its favor in a suit brought by one Smith upon certain earlier maturing coupons of the same bonds, together with proof offered that Cromwell was at the time the owner of those coupons, and was consequently bound by the former judgment as the real party in interest. But the court treated the bonds themselves, with the attached coupons maturing later, under proof offered and rejected that they had been purchased before maturity for value, as constituting a "different claim or cause of action." Nor is anything more than this decided by Davis v. Brown, 94 U. S. 423, 428, 24 L. Ed. 204. We cannot repress a belief that the same learned justice who announced the opinions in those cases would have treated Brown's present claim as a new demand within the meaning of the principles there laid down, rather than as a matter directly included in the judgment holding the Massachusetts decree to be void. As observed by Justice Field in Russell v. Place, 94 U. S. 604, 608, 24 L. Ed. 214:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit."

It may be said generally of the other decisions relied on by defendants upon the present question that they in one form or another relate to instances where there was failure to prove the whole of a

cause of action or the whole of a defense and it was sought later in second actions between the same parties to prove the rest of the cause of action or defense, and also present further claims and proofs as well as questions of law, and so were simply additional to those first offered and urged in support of the cause or defense as it was first presented. This may be illustrated by N. P. Ry. Co. v. Slaght, 205 U. S. 122, 27 Sup. Ct. 442, 51 L. Ed. 738; Kellogg v. Thompson's Estate, 115 Mich. 618, 73 N. W. 893; People v. Detroit R. Co., 157 Mich. 144, 121 N. W. 814. We are therefore constrained to hold that the present case, so far as the first plea is concerned, belongs to and is ruled by the class of decisions before cited, commencing with Northern Assur. Co. v. Grand View Ass'n. We do not find it necessary to determine whether Brown could rightfully have presented before the commissioners the equivalent of his present cause of complaint and have enforced a discovery and an accounting together with general equitable relief as prayed. We have for the purposes of this opinion assumed that he could have done so.

Defendants urge still another ground in support of the defense of res adjudicata. It in substance is that the judgment in Brown v. Fletcher (C. C.) supra (140 Fed. 639), is an adjudication that the commissioners were a court of competent jurisdiction, and that the claim presented to them was identical with the one involved in the suit then pending and passed upon in the federal court.

The action taken in the court below in Brown v. Fletcher is made the subject of the second plea wherein it is in effect alleged that on February 4, 1901, on the equity side of the court below, Frances M. Brown, administratrix, etc., filed a bill against the present defendants claiming that they and each of them were indebted to her in precisely the same amounts and for the same reasons that the present complainant now charges by his bill; that during the pendency of that bill the present complainant, who had succeeded to the rights of Frances M. Brown, presented to the commissioners the claim before considered; that thereupon, June 16, 1904, defendants moved to dismiss the former bill of complaint, and on July 23d the court entered a final decree finding that the subject-matter of the claim presented to the commissioners was the same as that of the bill of complaint in the suit of Mrs. Brown, and dismissing that bill on the ground that the present complainant had abandoned the suit and had elected to pursue another and inconsistent remedy before the commissioners, and that the "subject-matter, charges, and claims" presented to the commissioners and to the Wayne county circuit court, and also to the court below by the bill filed by Mrs. Brown and by the present bill "are identical in scope and effect," have been adjudicated, and the orders and decrees still remain in force.

While the whole of the bill so filed by Frances M. Brown is not set out in the record, enough appears to show identity between the subject of that bill and that of the present bill, so far as the alleged unsettled copartnership and the right to discovery and an accounting are concerned. Further, the suit and proceedings commenced and carried on in the Massachusetts court were stated in both bills so far as they

had been developed at the dates, respectively, of the filing of the two bills, but at the time of the filing of Mrs. Brown's bill the award of the arbitrator had not been made, and, of course the decree had not been entered. The difference between the two bills is that according to the scheme of Mrs. Brown's bill the issue stated concerning the unsettled copartnership and a discovery and an accounting was to be presented and urged only in the event that the court below should decide that the suit in Massachusetts abated upon the death of Fletcher, and that defendants would not be bound by any award made; while in the present bill it is averred that the award and the decree were afterwards rendered and then held to be void as against the Fletcher estate in Michigan and the direct and sole object is to secure relief upon the unsettled matters by discovery and accounting.

As shown in the statement, Mrs. Brown died testate (December 3, 1902) before the decree of the Massachusetts court was rendered (April 14, 1903), leaving her estate to the present complainant. He prosecuted the case in Massachusetts to its end, viz., to final decree in his own favor and presented his claim (April 6, 1904) to the commissioners in the Fletcher estate in the Michigan probate court; Mrs. Brown having never presented a claim before the commissioners.

After the occurrence of these events, the defendants filed a motion in the court below to dismiss the suit brought by Mrs. Brown. For convenience we shall now consider what happened in that suit before undertaking to pass upon either the claim that the disposition of the case amounted to an adjudication of the cause of complaint contained in the present bill or the claims made as to abandonment and election. The motion as first made was to dismiss "for want of prosecution." Later defendants filed an amended motion to dismiss the bill for the reasons:

"1. (a) Because the suit has been abandoned. (b) Because of want of prosecution. (2) Because the cause of action stated in the bill of complaint has been transferred and assigned to Albert W. Brown, who is now sole owner of the claim."

On July 23, 1904, the court rendered its opinion upon the motion (140 Fed. 639) and on the 25th of that month an order was entered reciting that:

"The motion to dismiss for want of prosecution having been heretofore duly argued by counsel for respective parties, and submitted, after due deliberation thereon, it is by the court now here ordered that the bill of complaint in this cause be and the same is hereby dismissed for want of prosecution, with costs."

No steps had been taken to have that suit revived and the present complainant seems never to have done anything in the case except to oppose its dismissal. Mrs. Brown at least in terms limited the object of her suit so as to stay proceedings of the executors of Fletcher in the probate court and to preserve the estate until the award of the arbitrator was made in the Massachusetts suit, unless the court should "decide that said suit (in Massachusetts) became and is abated by the death of said George N. Fletcher, and that the said defendants

would not be bound by any award." It would therefore seem that the time when full jurisdiction was really sought had not arrived at the date of the death of Mrs. Brown. A restraining order was issued upon the filing of the bill, and no steps appear to have been taken to disturb it or to have anything done on behalf of the defendants till the motion to dismiss the bill was filed. An affidavit bearing date of June, 1904, was filed in support of each motion, in which it was stated in substance that, upon the filing of her bill of complaint, an order was issued restraining defendants from closing the estate, which was still in force; that on December 26, 1902, Brown was appointed administrator de bonis non of the estate of White in place of his deceased wife, and that since her death no steps had been taken to revive the cause; that the probate court on petition of Brown made an order reviving the commission on claims in the estate of Fletcher for the purpose of hearing the claim of Brown and that he thereafter filed the claim, being the "same claim as that set up in the bill of complaint filed" in the suit commenced by Mrs. Brown.

We may now turn to the questions presented under the second plea: (1) Whether the judgment of dismissal must be treated as an adjudication of the matters submitted in the present bill of complaint; and (2) whether the judgment of dismissal was based on the ground that complainant had abandoned the suit so dismissed, and also had elected to pursue another and inconsistent remedy for the enforcement of the same claim. Nothing was ever done in that case to review the decision of the court below, and it must be conceded that it is not open to complainant to challenge the correctness of the judgment. But it is not claimed that the case is not open to construction here, as well as in the court below.

It is to be observed of all of these questions that the form of the judgment is clear and unambiguous, both in its recitals and conclusion. In the former it is stated as before shown that the motion was "to dismiss for want of prosecution," and, upon argument and submission "after due deliberation thereon," it was concluded that the cause be "dismissed for want of prosecution." If this judgment is to be interpreted according to its language, it is not a bar to another bill. Story's Eq. Pl. § 793:

"An order dismissing a bill for want of prosecution is not a bar to another bill."

To the same effect is the language of Chief Justice Shaw in Foote v. Gibbs, 1 Gray (Mass.) 412, 413; so of that of Sir William Grant in Hansard v. Hardy, 18 Ves. Jr. 455, 459; 1 Daniell Ch. Pl. & Pr. (6 Am. Ed.) 811; 2 Bates Fed. Eq. Proc. § 663, p. 713; Cooper's Pl. 270; Whitaker v. Davis (C. C.) 91 Fed. 720, 721; Loudenback v. Collins, 4 Ohio St. 251, 261; United States Fastener Co. v. Bradley (C. C.) 143 Fed. 523, 530.

The very expression in the judgment of such a reason for dismissal would seem to signify that the case was not disposed of on its merits; and as before quoted from Hughes v. United States:

"If the first suit * * * was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."

See, also, Keller v. Stolzenbach (C. C.) supra (20 Fed. 47, 48).

It is contended, however, that the judgment in question must be read in the light of the opinion of the court and the other proceedings in the case. In Nat. Fdry. Co. v. Oconto Water Supply Co., 183 U. S. 216, 234, 22 Sup. Ct. 111, 118, 46 L. Ed. 157, it was said by Mr. Justice White:

"It is elementary that, if from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings and to the opinion of the court in order to throw light upon the subject."

This recognizes by clear implication the rule that, where there is no uncertainty, such resort to pleadings and opinion is not made. But waiving this, and assuming that recourse may be had to the proceedings and opinion in the case, the limitation of the decree to a single and distinct ground of dismissal must still be borne in mind as the expression of what the court at last intended to adjudge. In other words, the decree on its face is consistent with a purpose to dismiss without impairment of the right to file another bill; and the other evidence should be reconciled as far as it reasonably can be with this purpose. For instance, Mr. Justice White, having occasion to consider language of an earlier opinion concerning the law of Louisiana, said in Abraham v. Casey, 179 U. S. 210, 219, 21 Sup. Ct. 88, 92, 45 L. Ed. 156:

"But the passages referred to were merely reasoning conducive to the demonstration that the rights asserted, in the bill, were cognizable at law only, and therefore not the subject of equitable jurisdiction. That the court did not intend to and did not decide what were the legal rights of Laccassagne is at once demonstrated by the fact that the decree below, which dismissed the bill, was amended so as to cause it to be without prejudice to an action at law, and as thus modified was affirmed. To treat the passages in the opinion, which are relied on as having the conclusive import now in argument attributed to them, would of necessity give rise to the following deduction: The opinion on the one hand dismissed the question of legal title from consideration because it was not within the province of a court of equity to decide who held the legal title, nevertheless the question of such title was finally disposed of in the cause. But the premise contended for points to a more flagrant contradiction, since it cannot be accepted without admitting that, although the decree was 'without prejudice to an action at law,' the right to such action was in substance foreclosed."

Surely a mere difference in words employed to express an intent common to two decrees cannot differentiate the results. True, passages are to be found in the opinion dismissing the case standing in the name of the deceased Mrs. Brown in effect like those commented upon in the opinion just referred to, which might indicate a scope broader than that of the decree; but those passages in the one as well as in the other were "merely reasoning conducive to the demonstration" that the suit should be dismissed. See, also, Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257; Carroll v. Lessee of Carroll, 16 How. 275, 287, 14 L. Ed. 936; Harriman v. Northern Securities Co., 197 U. S. 244, 291, 25 Sup. Ct. 493, 49 L. Ed. 739.

Although the conclusion reached is put upon the grounds that dismissal may be made for want of prosecution, even after abatement, the fact of abandonment, the failure to revive, the inability of defendants to compel revival and election to prosecute suit in the state court, the conclusion actually announced in the opinion, and its last utterance, is that "justice requires that the bill in this case should be dismissed for want of prosecution, with costs"—language entirely consistent with an intention that the dismissal should be without prejudice to file another bill. Examination of the proceedings and the opinion shows that the principal thing complained of by defendants was the pendency of the restraining order which prevented closing the Fletcher estate. A question arose as to the right of the court to dismiss the bill, since the action was admittedly abated by the death of Mrs. Brown. A learned discussion of the subject appears in the opinion, which took rather a wide range. But, if the court had intended to determine all the matters set out in the second plea, it is hard to see why the decree was limited as pointed out. Further, if we understand the argument, each one of the matters set up in the second plea in effect constitutes a distinct issue and would of itself justify the decree; but how is such an argument to be distinguished from the rule that a judgment based on several distinct issues is not an adjudication upon any particular issue in the sense that the plea of res adjudicata can be applied? Justice Brewer in Fayerweather v. Ritch, 195 U. S. 297, 307, 25 Sup. Ct. 58, 68, 49 L. Ed. 193, said:

"* * * Where the evidence is that testimony was offered at the prior trial upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of res adjudicata must fail."

As further illustrative of the theory that the opinion in the present instance must be looked into in order to ascertain what was adjudged, attention might be called to the claim made and the ruling that Brown could not have a "bill of revivor for want of privity" (140 Fed. at 647, 648), and that "this fact alone authorizes the dismissal of the suit." It ought to follow that the second plea should fail altogether, because Brown was never in fact a party to the cause.

So much has been said upon the subject of election that we need not do more than allude to that feature of the second plea. The opinion upon which the dismissal was made was rendered within two months after the time Brown filed his claim before the commissioners and six months before that body reached a conclusion. It is not to be presumed that the court meant so long in advance really to determine anything by its opinion as distinguished from its judgment touching the effect of Brown's acts before the commissioners. The strength of the claim in this regard, like that of res adjudicata under the second plea, must depend upon what Brown did, not upon what it might have been supposed he would do, before the commissioners. Besides, the remedies as before repeatedly pointed out by decisions cited were not inconsistent, though recovery in either suit would have prevented recovery in the other. But we need not pursue the subject further.

Since the court below definitely stated in its decree a single and sufficient ground for dismissal, and omitted to state any other ground set out in either the proceedings or discussed in the opinion, there is no foundation for the second plea.

The decree in the present case must be reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.