MARY W. GAYLORD v. NEBRASKA SAVINGS AND EXCHANGE BANK.

FILED MARCH 3, 1898. No. 7854.

1. Indorsement of Note. An indorsement of a negotiable promissory note in this language, "Pay to the order of—Mary W. Gaylord," *held* not a general indorsement, nor such an indorsement as would transfer the legal title by a mere delivery of such note.

2. Note: ASSIGNMENT. A negotiable promissory note may be transferred by a separate distinct assignment thereof, but in such case the transferee will not be protected as against infirmities or defenses which might be shown as against the assignor.

3. Estoppel: QUESTION FOR JURY. An estoppel *in pais*, well pleaded, presents a question of fact, which, as such, should be submitted to the jury for determination.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.  *Reversed.*

*James H. McIntosh*, for plaintiff in error.

*Silas Cobb, contra.*

RYAN, C.

This action was brought by Mary W. Gaylord in the district court of Douglas county against the Nebraska Savings and Exchange Bank for the value of a certain promissory note which plaintiff alleged the bank had wrongfully converted to its own use. This note was dated December 15, 1891, and by its terms was payable to Mary W. Gaylord, or order, December 15, 1896, with interest at the rate of six per cent per annum, evidenced by semi-annual coupons. The defenses of the bank will probably be best understood if there is given a portion of the undisputed history of this note subsequent to its execution.

Ralph E. Gaylord, a member of the firm of Muir & Gaylord, was the only son of Mary W. Gaylord. The note in question was taken by him in settlement of some controversy and was, with a mortgage securing it, sent in a letter to plaintiff January 2, 1892. In this letter, addressed to Mrs. Gaylord in Florida, there was the following language: "Now I want, at the first opportunity, to dispose of this note and mortgage for you so as to lend the money for you at a better rate of interest. I think I can do this soon. That I may have everything ready for this I inclose the bond for your indorsement and an assignment of the mortgage for your signature and acknowledgment. On the back of the note and each coupon you will see the words, 'Pay to the order of.' Please sign your name Mary W. Gaylord on the pencil line drawn under those words, eleven places in all. Also please sign your name to the assignment on the line

marked ' × ' and have it witnessed and acknowledged be·
fore a notary public. * * * I cannot put in the name of
the assignee, for I don't know to whom I may sell this."
These instructions were complied with in respect to the
note at least; and with the indorsements, as indicated, it
and the mortgage were returned to Ralph E. Gaylord,
at Omaha.    The form of indorsement on the bond and
on each coupon attached thereto was as follows:

"Pay to the order of<br>"MARY W. GAYLORD."

There were denials in the answer of the bank, and
there were also averments that the firm of Muir & Gay-
lord acted within the scope of its powers in transferring
said note and mortgage to the bank, but there was no
evidence to sustain these defenses, and Mrs. Gaylord
testified that the above quotation from the letter of her
son indicated the only manner in which he, or the firm
of which he was a member, was authorized to use the
note and mortgage.    The answer of the bank, however,
contained the following averments: "Further answering
defendant says that it did on the 9th day of March, 1892,
loan to Muir & Gaylord, F. D. Muir and Ralph E. Gay-
lord, the sum of eight thousand dollars ($8,000), lawful
money of the United States, and did receive from the said
Muir & Gaylord, F. D. Muir and Ralph E. Gaylord, their
promissory note for the payment of the said eight
thousand dollars ($8,000) and interest six months after
date.    Defendant alleges that it did on the 9th day of
May, 1892, loan to the said F. D. Muir and Ralph E. Gay-
lord the further sum of eight hundred dollars ($800) and
receive the promissory note of the said F. D. Muir and
Ralph E. Gaylord for the payment of the said eight hun-
dred dollars ($800) and the interest ninety days after date.
Defendant further says that at the time of the loan to the
said Muir & Gaylord of the said eight thousand dollars
($8,000), to-wit, on March 9, 1892, the said Muir & Gaylord
had in their possession under their control the assign-

ment heretofore referred to, duly executed by the plaintiff herein, that they also had in their possession the real estate coupon bond hereinbefore referred to and payable to the order of the plaintiff, and that said bond was at that time indorsed in words and figures following, to-wit, 'Pay to the order of—[signed] Mary E. Gaylord,' and defendant did receive from the said Muir & Gaylord said coupon bond and mortgage, together with the assignment thereof, from said Muir & Gaylord as collateral security to the above notes of the said Muir & Gaylord, as they had a right to do, and the said Muir & Gaylord had full authority and right to assign the same." The averments of the answer were denied in plaintiff's reply. On the trial there was introduced in evidence an assignment signed and acknowledged by Mary W. Gaylord. This was written on a piece of paper separate and distinct from the note and mortgage. The date of the certificate of acknowledgment made by a notary public in Florida was January 8, 1892. This assignment was filed for record in the office of the register of deeds of Douglas county July 10, 1894, and while its primary object seems to have been to transfer the mortgage, there was contained in it an assignment of the note to the Nebraska Savings and Exchange Bank. Mrs. Gaylord testified that when she signed the assignment it was not drawn to the Nebraska Savings and Exchange Bank. This was not contradicted, neither was there any effort to show by whom, or when, the name of the bank was written in. The evidence of the officers of the bank was to the effect that the bank made the two loans pleaded in the answer in reliance upon the note and mortgage which it received as collateral security from Muir & Gaylord when the first of the two loans was made to them. This was the condition of the evidence when the court instructed the jury to find for the defendant, and accordingly there was a verdict and judgment.

In the consideration of this case we shall not attempt to discuss the negotiability of the note, but, for the argu-

ment's sake, will assume that it was negotiable in form. It was held in *Doll v. Hollenbeck*, 19 Neb. 639, where a negotiable promissory note had been assigned by a writing separate and distinct from the note itself, that the assignee was not entitled to protection as a *bona fide* purchaser of negotiable paper transferred before due, and this holding was approved in *Colby v. Parker*, 34 Neb. 510. As between the parties to this action, therefore, this assignment merely operated to transfer the note and mortgage. The indorsement of the note as pleaded in the answer was in this language, "Pay to the order of—[signed] Mary E. Gaylord." It is probable that the transcript incorrectly shows the initial letter as "E" instead of "W," and we shall therefore lay no stress on the variance between the name of the payee and the name as in the answer alleged to have been indorsed. If the indorsement is to be considered as above quoted, it is clear that it is not a general indorsement, but is an indorsement intended, when completed, to be limited to whatever name shall be inserted in the blank. From this incomplete indorsement we must conclude that when the bank took the note as collateral security the payee had not yet determined to whom she would make the transfer. If the bank has correctly pleaded the indorsement according to its understanding it was bound to know when the note was offered to it that the payee had, as yet, neither an intention to name an indorsee nor the design of making a general indorsement. If, however, the indorsement is to be treated as though there was no intention to complete it in the future by inserting the name of the indorsee it would read "Pay to the order of Mary W. Gaylord." To effect a transfer in this view of the indorsement it would be necessary that Mary W. Gaylord should indorse the note anew. Under such circumstances nothing was really effected by the indorsement, for she could equally as well in the same manner transfer the paper as payee. We are therefore of the opinion that the indorsement on the note in the condition

in which it was when by the bank it was received as collateral security did not vest the legal title in the bank. Its rights as transferee depend upon the assignment made separately, and this, as we have already seen, merely operated to transfer the title and not to afford protection as to an innocent purchaser of negotiable paper before due.

The answer of the bank, in so far as it specially pleaded an estoppel as against the plaintiff, has already been quoted. It was proper that this defense should be specially pleaded. (*Nebraska Mortgage Loan Co. v. Van Kloster*, 42 Neb. 746; *Erickson v. First Nat. Bank of Oakland*, 44 Neb. 622; *Gregory v. Kenyon*, 34 Neb. 640; *Scroggin v. Johnson*, 45 Neb. 714.) The testimony of plaintiff, that she did not authorize her son, or the firm of which he was a member, to use the note as collateral security was uncontradicted. Whether or not the bank furnished the money on the faith of this collateral, and whether or not it was deceived into doing so by representations of the agent of plaintiff apparently sanctioned by her acts or negligence, were questions of fact which should have been submitted to the jury. It was erroneous peremptorily to direct a verdict for the defendant, and the judgment of the district court is therefore reversed and this cause is remanded for further proceedings.

REVERSED AND REMANDED.