MARGARET JACKSON, APPELLANT, v. CLAIRE EICHENBERGER ET AL., APPELLEES.

205 N. W. 2d 349

Filed March 16, 1973. No. 38641.

Laurice M. Margheim of Bump & Bump, for appellant.

Michael V. Smith, for appellees.

Heard before WHITE, C. J., BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ., and HASTINGS, District Judge.

HASTINGS, District Judge.

Plaintiff brought this action to quiet title to certain real estate claiming adverse possession as against defendants who are the record titleholders. The trial court found in favor of defendants and against plaintiff, and ordered that plaintiff's action be dismissed. Plaintiff appeals.

The land in dispute is a quarter section of grass land located in the geographic center of Section 27. It was patented to Susan Wilson, of whom the defendants are the only living heirs. The remainder of Section 27 was owned and occupied by James Jackson until his death in 1936, and was occupied by his son Lyle and Lyle's wife, the plaintiff, until she moved to town in 1970, Lyle having died in 1963. The disputed land was not listed in the estate inventory of either James or Lyle Jackson, although the remainder of the section was inventoried in both estates and is now owned of record by plaintiff.

The disputed land has been used by the Jackson family from 1917 to the present time, apparently beginning on some sort of a lease arrangement.

Isaac Jackson, the 80-year-old brother of Lyle, testified that he lived on Section 27 until 1918; that his father James owned all the section except the disputed quarter; that as administrator of his father's estate he paid rent on the interior quarter, and later just paid the taxes. He stated that the arrangement for the land was "$30 a year, and I paid the taxes, and I sent them the rest." He sent the balance to A. E. and I. E. Deal, who apparently were intermediate heirs of Susan Wilson, and "It went into another estate, and I didn't

know where to pay it to, so I just paid the taxes."
The James Jackson estate was closed in 1944 and the
witness had nothing further to do with the land after
that.

Commencing in 1945 the taxes were paid by Lyle
until his death in 1963, following which his son Joe, as
executor of his estate, paid the taxes until 1966 when
he allowed them to become delinquent, and then secured
a county treasurer's certificate of tax sale at private
sale in November of 1967.

Plaintiff testified that her husband farmed the entire
section as one unit and it was not until just before
Lyle's death that she knew the interior quarter was
titled in someone else's name.

Defendants were aware that Susan Wilson, their first
cousin, had owned the property at one time but it was
not until Joe had caused a notice to be published in
the fall of 1969 preparatory to obtaining a tax deed
that they were aware the property was still titled in
her name.   They then had a court determination of
heirship and redeemed the property from the tax sale.
When efforts to negotiate a sale or lease of the property
between the parties failed, this action was commenced.

Simply stated, plaintiff and her predecessors entered
upon the premises under some sort of lease agreement
and continued to occupy and use the premises in the
same manner up to the time this action was commenced.
They complied with one requirement of the agreement,
that of paying taxes, which plaintiff now urges as a
circumstance to be considered in support of her claim
of adverse possession.

The following quotation from Koch v. County of
Dakota, 151 Neb. 506, 38 N. W. 2d 397, is particularly
pertinent:   " 'Where possession of real estate is entered
upon under an agreement with the owner with refer-
ence to the occupancy and not as owner, the occupant
cannot assert ownership by adverse possession unless
he first surrenders his possession, or by some unequiv-

ocal act notifies the landlord that he no longer holds under the agreement made.' Garner v. McCrea, 147 Neb. 541, 23 N. W. 2d 731.

"Interveners argue that the refusal to pay the rent in 1937 constitutes the unequivocal act; * * *.

"It has been held as well settled that '* * * when the relation of landlord and tenant has been created, the possession of the tenant is consistent with the title of the landlord, and the mere non-demand and non-payment of rent, are not sufficient to bar the landlord's title * * *. In such cases, possession is presumed to be in accordance with the title, and this presumption will hold until some notorious and unequivocal act of exclusion shall have occurred.' Ehrman v. Mayer, 57 Md. 612. See Barada-Ghio Real Estate Co. v. Keleher (Mo.), 214 S. W. 961."

Plaintiff in this case neither first surrendered possession nor acted unequivocally to notify defendants that she was now holding adversely to their interests. The judgment of the district court is correct and is affirmed.

AFFIRMED.